[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10932
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cr-00342-JDW-EAJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VENCOT MAREAN MAXWELL,
a.k.a. Timmy Tyron Joseph,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 10, 2013)

Before HULL, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Vencot Marean Maxwell appeals his convictions for making a false

statement in a passport application, making a materially false statement regarding a

matter within the jurisdiction of the United States Department of State, and

aggravated identity theft.  On appeal, Maxwell argues the district court abused its discretion by admitting as evidence a certified copy of his Jamaican birth certificate without allowing him to investigate the authenticity of the document. For the reasons set forth below, we affirm Maxwell's convictions.

I.

In 2011, a federal grand jury returned a four-count superseding indictment, charging Maxwell with making a false statement in an application for a passport in violation of 18 U.S.C. § 1542 (Count One); making a materially false statement regarding a matter within the jurisdiction of the United States Department of State in violation of 18 U.S.C. § 1001 (Count Two); knowing possession and use of the means of identification of another person with intent to commit a crime in violation of 18 U.S.C. § 1028(a)(7) (Count Three); and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (Count Four).  Specifically, the indictment alleged that Maxwell falsely stated in a passport application that: (1) his name was Timmy Tyron Joseph; (2) he was born on a certain date in the Virgin Islands; (3) he had a certain Social Security number; and (4) he was a United States citizen.

On the first day of trial, Monday, December 5, 2011, defense counsel informed the court that, on the previous Friday, the prosecutor had sent him a copy of Maxwell's birth certificate from the Jamaican government ("certified copy"). Defense counsel stated that the government had "done a good and thorough job" of

trying to provide the defense with this discovery as soon as possible.  Nonetheless, he argued that, even if the late disclosure was not technically a discovery violation, the defense would be "hard pressed" to prepare for trial.  Thus, Maxwell moved to exclude the birth certificate from evidence.  As to prejudice, he argued that the government's delay in providing the birth certificate was "especially prejudicial," not just under Fed.R.Crim.P. 16, but also under Fed.R.Evid. 902(3).  Specifically, he stated, Rule 902(3) provides that, when there is a foreign document, the defense must be given a reasonable opportunity to investigate the authenticity and accuracy of that document.

In response, the government indicated that, on August 2, 2011, it had sent a copy of the birth certificate ("uncertified copy") to Maxwell's counsel.  The copy was not the original certified copy with a seal printed on it.   The government had also requested a certified copy of the birth certificate from the Jamaican government in August 2011.  Defense counsel confirmed that he had received the discovery, including the uncertified copy of the birth certificate.

Initially, the court denied without prejudice Maxwell's request to exclude the birth certificate, finding that the government had acted appropriately in requesting the birth certificate and it did not appear that Maxwell had suffered any undue surprise.  Further, the court noted that it had not yet seen the original birth certificate, so the motion was denied without prejudice.

On the second day of trial, the government presented the certified copy of Maxwell's birth certificate that included a raised seal.  The court then physically compared the certified and uncertified birth certificates, and based on its observations, the court found that the two birth certificates were, in substance, identical.  The documents were simply issued on different dates under the signature of different representatives of the Jamaican registrar general and deputy keeper of the records.  Thus, Maxwell was aware that the government intended to introduce a Jamaican birth certificate with his name since August 2011, and there could be no undue surprise.  As a result, the late disclosure did not prevent an adequate preparation of a defense.

Further, the court explained that, to the extent that Maxwell had argued that, under Rule 902(3), he was unable to confirm the authenticity of the certification, his challenge related only to the presumption of authenticity, not to whether the document was admissible.  The court noted that the government had submitted a final certification by a foreign official and, as such, under Rule 902(3), the document was self-authenticated.  In sum, the court stated,

> Having considered the factors, including the reasons for the delay in producing the document, the extent of prejudice, if any, [that] the defendant may have suffered because of the delay, and the feasibility of curing any such prejudice. . . I find that the defendant has not been unduly surprised by the untimely disclosure, that the government acted with appropriate and due diligence in attempting to secure this foreign documentation, that it provided essentially a copy of the birth certificate as part of Rule 16 discovery in a timely manner, and that

4

these two small differences concerning the issue date and the person who signed the document on behalf of the registrar general of Jamaica are not material such that the defendant has not been afforded an adequate opportunity to prepare a defense.

Therefore, the court found that there was no basis to exclude the document and that the evidence did not deprive Maxwell of a fair trial.

Maxwell proceeded to trial, and the jury found him guilty on all counts. The court, however, vacated his conviction as to Count Three because it violated his right against double jeopardy. The court imposed a 30-month total sentence.

## II.

We review discovery and evidentiary rulings for abuse of discretion. *See United States v. Campa*, 529 F.3d 980, 992 (11th Cir. 2008); *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005). The district court abuses its discretion when its decision "rests upon a clearly erroneous fact, an errant conclusion of law, or an improper application of law to fact." *Baker*, 432 F.3d at 1202. Further, we review preserved evidentiary objections for harmless error but, when a party raises a claim for the first time on appeal, we review for plain error only. *Id.* We will not reverse a defendant's conviction on the basis of a discovery violation unless it violates that defendant's substantial rights. *United States v. Camargo–Vergara*, 57 F.3d 993, 998 (11th Cir.1995). "Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to

5

prepare a defense, or if the mistake substantially influences the jury." *Id.* at 998-99.

Rule 16 provides, in relevant part, that the government must, upon the defendant's request, allow the defendant to inspect and copy all documents that "the government intends to use. . . in its case-in-chief at trial." Fed.R.Crim.P. 16(a)(1)(E). Rule 902 provides, in part, that certain documents are self-authenticating, which means extrinsic evidence of authenticity is not required before the document may be admitted into evidence. Fed.R.Evid. 902. Specifically, Rule 902(3) includes foreign public documents that are executed or attested in an official capacity by a person who is authorized by the laws of a foreign country to do so. Fed.R.Evid. 902(3). In order to qualify as self-authenticating, "[t]he document must be accompanied by a final certification that certifies the genuineness of the signature and the official position of the signer or attester." *Id.* Finally, if the parties have been given a reasonable opportunity to investigate the document's authenticity and accuracy, the court may (1) order that it be treated as presumptively authentic without a final certification; or (2) allow it to be evidenced by an attested summary with or without final certification. *Id.*

As an initial matter, the government argues that we should review Maxwell's arguments on appeal only for plain error. However, Maxwell adequately preserved in the district court both his discovery challenge based on

6

Rule 16 and his evidentiary challenge based on Rule 902(3). Specifically, he argued that: (1) the government violated Rule 16 by failing to provide the defense with a certified copy of his Jamaican birth certificate in a timely manner; and (2) the admission of this evidence violated Rule 902(3) because the defense did not have an opportunity to verify the authenticity of the document. Thus, we review the district court's denial of Maxwell's motion to exclude the certified birth certificate for an abuse of discretion. *See Campa*, 529 F.3d at 992; *Baker*, 432 F.3d at 1202.

The district court did not abuse its discretion by admitting into evidence the certified copy of Maxwell's birth certificate because the court applied the correct legal standards and its findings were supported by the facts in the record. *Baker*, 432 F.3d at 1202. As to Maxwell's discovery challenge under Rule 16, the district court found that the government acted with due diligence in attempting to obtain the certified birth certificate from the Jamaican government. Moreover, the court found that the late disclosure of this evidence not did unduly surprise Maxwell or deprive him of an opportunity to prepare a defense. At trial, Maxwell conceded that the government had "done a good and thorough job" of attempting to provide the defense with discovery as soon as possible. Further, he conceded that he had received an uncertified copy of his birth certificate in August 2011, four months

prior to trial, and that he knew that the government intended to submit the birth certificate as evidence.

As to the differences between the certified and uncertified copies, Maxwell suggested that he was unable to prepare a defense because the two copies had a different issuance date and the signatures of different Jamaican officials. However, he does not challenge the district court's finding that the two birth certificates were identical with respect to the material identifying information such as his name, date of birth, mother's name, physician's or midwife's name, and place of birth. Thus, it appears that, if a defense of challenging the validity of the birth certificate was available, Maxwell had sufficient notice to pursue such a defense prior to trial by using the information included on the uncertified copy. As such, the district court did not abuse its discretion in concluding that any discovery violation resulting from the government's late submission of the certified copy did not result in undue surprise and did not prevent Maxwell from pursuing a defense. *See Camargo–Vergara*, 57 F.3d at 998. Although the certified copy that included the raised seal from the Jamaican government might have carried more weight with the jury, Maxwell has not established that the late submission of the certified copy violated his substantial rights. *See id.*

Finally, Maxwell's argument based on Rule 902(3) is misplaced. On appeal, he suggests that, under Rule 902(3), he was entitled to an opportunity to investigate

8

the authenticity of his certified Jamaican birth certificate.  As discussed above, he was given such an opportunity because he received a nearly identical copy of the birth certificate four months prior to trial.  Regardless, as noted by the district court, Maxwell's Jamaican birth certificate was admissible as a self-authenticating document under Rule 902(3) because it was accompanied by a final certification from a Jamaican official.  Under Rule 902(3), when a foreign document is not accompanied by such a certification, a district court *may* order that the document be treated as presumptively authentic so long as the parties are given a reasonable opportunity to investigate the document's authenticity.  *See* Fed.R.Evid. 902(3) (emphasis added).  In this case, however, the district court did not need to consider whether such a presumption was appropriate because Maxwell's certified birth certificate was accompanied by a final certification from Jamaica's Director of Passport Services.  Thus, the district court did not abuse its discretion in rejecting Maxwell's Rule 902(3) argument because it was relevant only to the presumption of authenticity, not to the admissibility of the foreign document.  *See* Fed.R.Evid. 902(3).

For the foregoing reasons, we affirm Maxwell's convictions.

**AFFIRMED.**

9